Chief Jiistice Robertson
delivered the Opinion of ihe Court.
The City Court of Louisville, organized under an act of assembly approved February 22ad, 1836, having adjudged against Francis Tesh a fine of fifty dollars, assessed by a petit jury, on an indictment for assault and battery, found against him by a grand jury empanneled by the authority of the same court, he prosecutes this appeal; and insists that the judgment is invalid and erroneous, be.cause: (1.) the court which rendered it, is unconstitutional; (2.) if constitutional, it had no jurisdiction over the case; (3.) there was no ministerial officer legally authorized to summon the juries; and (4.) there was no legally appointed prosecuting attorney.
These objections will be severally, and very briefly, considered in the order in which they are stated.
First. The judicial power of this Commonwealth is vested in a Supreme Court established by the constitution, “and in such inferior courts as the General Assembly “ may from time to time, erect and establish.” (Sec. I. Art. 4.) “The Judges both of the supreme and inferior courts “ shall hold their offices during good behaviour.”—(Sec. III. Art. 4.)—uand (during) the continuance of their re“speciive courts.” (Sec. XIS. Art. 6.)
The second section of an act of the 22nd February, 1836, established a police court in the city, of Louisville, “to be styled the City Court of Louisville,” to “be held by a single judge, to be appointed as other judicial officers of the State;” and the third section, among other things, gives that court jurisdiction, concurrently with the Jefferson Circuit Court, “of all pleas of the “ Commonwealth arising within the city of Louisville, except felony.” And the twelfth section limits the ox *523 istence of the court to four years unless sooner abolished.
Legislature. And when a court is abolished, the office which was filled by its judge. ceases to exist;, and the term for which he was ap pointed—“during the continuance of his court” of course, expires, constitutionally.] A provision to a, bolish a court, mayabe (inserted in the same act by (which it is created, in other words, its duration may be limited, consistently Vvith the constitution ; & the act (of Feb. 1836) establishing the city court ofLou isville—to continue for four years only—is clearly] constituí tional.
There can be no objection to the constitutionality of the City Court of Louisville which can, in any degree, be plausible, unless it be that which has been urged in this case: that is, that the Legislature had no power to limit the duration of the court.
But that objection cannot prevail. A court established by legislation may be abolished by legislation. The Courts of Appeals, being ordained and established by the constitution, cannot be abolished by any other power than that of the people in convention. But all inferior courts, being created by the Legislature, must depend, for the continuance of their existence, on legislar live will. And, as the Legislature may repeal an act establishing an inferior court for an indefinite period, it would, we think, be difficult to prove that the same power may not, in the first instance, prescribe a limitation to the existence of such a court. Judges, holding their offices during good behaviour and the continuance of their respective courts, though appointed to hold during good behaviour, cannot, of course, be in office when there is no office. And, even if they had a right to hold commissions during good behaviour, notwithstanding a constitutional abolition of the office, all that could be said would be, that they would be entitled to all the rights and privileges guarantied to them by the constitution, and that, therefore, they would be judges without jurisdiction or judicial power or duty of any kind. And such a dilemma would not prove that a limitation to the office would be void. But if it could reasonably lead to such deduction, the consequence would be, that the existence of the court would be unlimited, except by the. discretion or life of the incumbent, and could never be. terminated as long as he might please to object. And, even in that view, a void limitation would not make the. office itself void.
Whatever may be thought, therefore, of- the policy of ■ limiting the duration of inferior courts, we cannot doubt the legislative power to do it; and are therefore clearly *524 o(f the opinion that the City Court of Louisville was constitutionally created.
The city court of Louisville has jurisdiction’ concurrent with the Jefferson circuit court) of “all pleas of the com monwealth arising within the city,” except felonies: i. e.—os the act ia construed—over of-fences committed in the city: but if it could be held to extend to offences committed out of the city, it would be invalid, so far only as relates to them, not as to those committed within the ci.ty. The Mayor and council of Louisville are authorized to appoint a city marshal, who is to execute all process from the city co.urtt but the judge, for special cause, may direct pro-’ cess to the sheriff or any dep. sh’f. constable or other discreet per, son.
There is no valid constitutional objection tp. th.at mode of appointing the marshal, nor to the execution of process by him.
The judge doubting the validity of the appointment of the marshal, is good “special cause’.’ for directing preces to another pjficer,
Second. Nor can we doubt that the City Court had jurisdiction over this case, for it was “a plea of the Commonwealth arising” in the city. The objection made, under this head, in argument, is that the statute, properly construed, does not mean that the court may have, concurrent jurisdiction over penal offences committed within the cityr, but means only that it may take cognizance of all penal cases instituted there, without regard to the. place where the offence may have been committed; and therefore the statute is unconstitutional, in that respect. Such an interpretation is altogether indefensibie. But were it maintainable, nevertheless, as the battery charged against Tesh was committed in Louisville, the City Court had undoubted jurisdiction—whether “pleas”—“arising”—&c. mean offences committed in Louisville, or prosecutions instituted there for offences commit" ted any where.
Third. The tenth section of the statute authorizes, the Mayor and Council of Louisville to appoint a city Marshal; and the fifth section provides that all process from the city court, “shall be directed to and executed “by the Marshal of the said city;” and also, declares that “the judge of said court, for special cause, may “ direct the process of said court to any sheriff, deputy “ sheriff, constable, or other discreet person.”
In this case it appears, that the judge, doubting the power of the Legislature, to authorize the permanent appointment of an executive officer of the court otherwise than according to the mode prescribed by the constitution for the appointment of sheriffs, made an order directing process ’to the, sheriff and deputy sheriffs of Jefferson; anda deputy, who was also the city marshal, officiated in this case. But the counsel for the appellant insists, that the cause for directing the process to the sheriff was not a “special cause,” and that, therefore, that officer had no authority to act; and consequently, that the, judgment was illegal, for the want of a proper officer to summons the grand jury and venire.
\Ye do not doub.t the pouter of the Legislature to au *525 tborize any court of the State to direct its process to any person, official or private; nor the validity of the service, if any such person shall voluntarily execute such a trust.
Thesheriffofthe county may, ex officio, execute the process of the city court, when there is no other valid mode of executing it, prescribed by law.
The constitution requires the appointment of an, attorney general £ and of such other attorneys for the com’th as may be nocessa? ry; and sgems contemplate two classes, viz: one attorney for each county, who is to be appointed by the county court, & whom the court has, by the constitution, authority to appoint, without any legislation on the subject. And another class— •with higher and more extensive duties—the num ber of which— the duration of the offices they are to fill, their localities, duties &c. must be determined by, and dependent upon, the Legislature. And these being fiofficers whose pillees are established by law,” they must be appointed by the Gov. and Senate. As the city court of Louisville is not a county Court, the judge has no power to appoint an attorney for the commonwealth. Nor ig there any such pffice as an atto. of thecom’th for that court. Nor is it the duty of the atto. of the com’th for the district to act as such in the city pourt.
*525 And, moreover, if the authority to direct process to the city marshal, not as an officer of court to be commissioned according to the constitution, but as a private individual merely, could be doubted, we have no doubt that the reason which influenced the city judge, was a good “special cause” for directing the process to the sheriff'. Had there been a sheriff regularly and permanently appointed for said court, and he had died, no one could doubt that there would then have been special cause for directing process to some other person, under the authority of the statute. Besides, so far as the statute creating the city court and amending the charter of incorporation may not conflict with the official authority of the sheriff of Jefferson, he and his deputies, would, ex officio, and without express authorization by the court, or the statute, have legal power to execute pny process of such a court as that of the city of Louisville—the city being within the limits of his county, and the jurisdiction of the court, as far as it exists, being similar to that exercised by the Circuit .Courtt
But the city authorities have, by its charter, power, to appoint a city marshal. And there being nothing in the constitution requiring a court of justice to employ a sheriff or any other official agent as its executive minister, we cannot doubt the power of the Legislature, to authorize a court to select its own agent, or the power to designate for it, some other than a sheriff; and therefore we are clearly of the opinion, that the city marshal had, in this case, authority to act for the court, in all respects, as a sheriff. We cannot feel therefore that there is any solidity in the third objection to the judgment.
Fourth. Nor have we been able to perceive the imagined reasonableness of the last objection.
The ninth section of the third article of the constitution declares, that the Governor “shall nominate, and, by and with the consent of the senate, appoint all officers “ whose offices are established by this constitution, or *526 “ shall be established by law, and whose appointments “ are not herein otherwise provided for.”
And the twenty-third section of the same article contains the following declaration: “an attorney general, and “ such other attorneys for the Commonwealth as may be “ necessary, shall be appointed: whose (duty shall be reg- “ ulated by law. Attorneys for the Commonwealth, for “ the several counties, shall be appointed by the respec- “ tive courts having jurisdiction therein.”
County attorneys may, according to the constitution, be appointed by the County Courts, or, in other words, “the courts having jurisdiction therein.” In addition to the twenty-third section, which has been quoted, a proviso in the ninth section, also before quoted, authorizes the County Courts to appoint constables and “such oth-' “ er inferior officers whose jurisdiction may be confined “ within the limits of a county.”
The true import of the twenty-third section is not perfectly clear. It contemplates, in addition to an Attorney General, two distinct classes of “Attorneys for the Commonwealthone class to be appointed for each county, by the court thereof, and without any legislative injunction or authorization; and another class to be provided for by the legislative discretion, and to be appointed, of course, (when so provided for j) by the Governor and Senate. Whether the court of each county, and the attorney for each county, were intended to mean only the “County Courts” and ‘iCounty Attorneys” (or attorneys of these courts,) and how far the two classes of “ Attorneys for the Commonwealth” differ, are questions respecting which the constitution is not unambiguous. It is our opinion, however, that attorneys for the county courts, to be appointed by those courts exclusively, constitute one class; and that attorneys for the Commonwealth, for superior courts of more general, criminal jurisdiction, belong to the other class. But there may be room for some doubt whether these latter commonwealth’s attorneyships be offices established by the constitution. If they be, then, not only can they never be abolished or cease to exist, as long as the constitution shall remain unchanged, *527 but the incumbents must be appointed by the Governor and Senate.
"The mayor and council of Louisvilld are atliorized, by the' act establishing the city couit; to 'em ploy an altdiney for the court; and allow him such compensation as may bd agreed on; whicli leaves it wholly at their discretion, to employ one or not—for any time, or oc* casion. Such em ployment does not create an office established by law,normake the person employed anofficer; yet, when employed, he is, by virtue of the statute and his employment, an attorney for the com’th, and his acts as such are valid. The act is not in that respect unconstitutional.
*527 We are strongly inclined, however, to the opinion that such attorneyships are not offices established by the constitution; but depend on legislation for their existence and duration; and therefore, when exisiling as offices, are established “by law,” and may, of course, be limited or abrogated by law.
The constitution established a Court of Appeals and an Attorney Generalship; but it did not establish inferior courts, although it evidently contemplated the existence of such tribunals; and, for a parallel reason, we may infer that, though it contemplated such offices as those of attorneys for the Commonwealth to be nominated and commissioned by the Governor, it left the creation of them to legislative discretion, from time to time. “Such other attorneys for the Commonwealth as may be necessary,” implies that the Legislature shall determine whether any, and, if any, how many are necessary before there can be any such existing office as that of such attorneys for the Common'wealth. And it is obvious that the Governor could not commission any such attorneys, without the authority of some previous legislation. And hence we infer—as was virtually decided in Bruce vs. Fox (1 Dana 447)—that the duration, as well as existence, of such an office depends on legislative will.
Nevertheless, when the office of such attorney for the Commonwealth shall have been established by law, the incumbent can be permanently appointed by the Governor and Senate only. And, as Louisville is not a county, nor its city court a court of a county, or a county court, the judge of that court derives no power from the twenty-third section of the constitution (supra) to appoint an attorney for the Commonwealth.
But there is no such office as that of Attorney for the Commonwealth for the City Court of Louisville. A Circuit Court attorney is no more the attorney of the Commonwealth for the special city court, than for the county court of Jeffei’son.
Nor lias the act establishing the City Court of Louisville established, also, the office of attorney for the Corn *528 nionwealth for that court. It provides only, “that thd “ mayor arid council of the city of Louisville shall “ have the right to employ a prosecuting attorney fof “ the police court of Louisville, and may allow him “ süüh reasonable compensation as as may be agreed on^ fyc. This provision clearly means that the mayor and council ihay employ a prosecuting attorney* or not, just as they may think fit, arid for a special occasion, or by the season, or year, or at will, or indefinitely, and shall pay him something, or nothing, just as he and they may agree.- Such a person so employed cannot be deemed thé incümbent of an office established by Zato. His em* ployment is an agentíy merely, and he is but an agent of the Commonwealth for prosecuting thé pidas of the Com* mdnwealth in a special court of limited jurisdiction.But, whenever employed, the act of the' Legislature makes him an attorney for the Commonwealth, for all practical purposes of legal effect. And undoubtedly the Legislature had that power; and, in exercising it, did not violate any provision of principle of the fundamental law. Arid therefore, when employed by the mayor and council, such an attorney is a legal representative of the Commonwealth, and his proper acts in the police court, are as valid and effectual as those of a circuit court attor. ney can be in a Circuit court.
It is competent for courts of crim ¡nal jurisdiction to appoint persons to prosecute (when no other mode of appointment is prescribed» • The author ity of a prosecuting attorney for the city court of Louisville, appointed by the judge, and employed by the mayor and council, admits of no doubt.
Besides, had no mode been prescribed for appointing a prosecuting attorney, the court itself, charged with criminal jurisdiction, would have had the inherent power, ex officio, to appoint a fit person to represent the Commonwealth, and any person, acting under such authority, would act as legally and effectually as if he had been commissioned by the Governor. Fof many years, when there was no law requiring the appointment of attorneys for the Commonwealth, or prescribing the mode of appointing them, the courts made appointments at pleasure and without question or com. plaint. And even now, it is not doubted that, in the absence of the commissioned attorney for the commonwealth, a Circuit Judge may appoint a substitute ad interim; and the legal authority of such a Zocum lenens has never been seriously questioned or doubted.
The fact, that a prosecution wascarried on withPoí<M¡n°faS> torney; or by the assent'oFthe gdUlt’'ttoTeom" petent authority, IS„;,not material the party convlcte? can takeii
In this case, the attorney who prosecuted for the Commonwealth had been áppoihted by the cou.rt, and employed also by the mayor and council of Louisville. And we have no doubt, therefore, that his authority was legal and sufficient.
But had he, with the sanction of the court, without any formal appointment, appeared and acted as the organ of the Commonwealth, or had no person so appeáred or acted, the judgment of conviction would hot, on that ground, have been erroneous; After verdict it is too late to object to the authority of the prosecuting attorney; and after the finding of a true bill, by a grand jury, the fact that the attorney, who had officiated for the state, under th‘e authority afid sanction of the Court, had not been commissioned by the Chief Magistrate of the Commonwealth, would be immaterial and unavailing to the accused. The attorney who acted was, pro hac bice, “the attorney for the Commonwealth.” And it should not be presumed', that the accused had been unjustly prejudiced b.y his intervention.
Bht we cannot imagine why a conviction, in other respects legal and proper, should be deemed erroneous or •prejudicial merely because the Commonwealth had been represented by an attorney selected by the Court, without objection, or by an amicus enrice acting under the sanction of the Court, or had been altogether unrepresented by professional counsel, or any other agency than that of the Court and jury of the country.
We therefore conclude, that this last and only remaining objection to the judgment, is as untenable as any of the others.
Wherefore—having thus cursorily considered the several objections which have been made to the judgment, and not finding in it any error of which the plaintiff should complain—we conclude that it should be affirmed.
It is therefore considered by the Court, that the judgment of the Court below be affirmed,